## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. KEMP, | No. 4:19-CV-01366 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| SUPERINTENDENT OF SCI-HUNTINGDON, *et al.*, | |
| Respondents. | |

## MEMORANDUM OPINION

### OCTOBER 12, 2021

*Pro se* petitioner William J. Kemp ("Kemp"), who is incarcerated in the State Correctional Institution-Huntingdon ("SCI-Huntingdon"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a criminal conviction and sentence in the Lycoming County Court of Common Pleas. The petition is ripe for disposition. For the reasons that follow, the petition will be denied.

## I.    BACKGROUND

The state courts of Pennsylvania have succinctly summarized much of the relevant factual background and procedural history.[1] The facts of the case began on February 13, 2012, when Kristen Radcliffe, Michael Updegraff, and Thomas

---

[1]    *See Commonwealth v. Kemp*, No. 993 MDA 2014, 2015 WL 7078886, at *1 (Pa. Super. Ct. June 8, 2015).

Schmitt were drinking at a bar in Williamsport, Pennsylvania.[2]  Radcliffe and Updegraff, who were dating at the time, got into a disagreement.[3]  Radcliffe left the bar and began walking down Fifth Avenue, where she ended up in front of Kemp's apartment.[4]  Twenty to thirty minutes later, Kemp gave Radcliffe a ride to the residence that she shared with Updegraff.[5]

When they arrived, Kemp entered the residence with Radcliffe.[6]  Updegraff was upstairs and Schmitt was sitting on a couch on the first floor.[7]  Updegraff then came down the stairs and asked Schmitt who the hell Kemp was.[8]  Schmitt stated that he did not know who Kemp was and that Kemp had come in with Radcliffe.[9]  Radcliffe explained that Kemp had given her a ride home.[10]  Updegraff told Kemp to get out of the house, but Kemp refused to leave.[11]  Radcliffe then apologized to Kemp for Updegraff's behavior and asked Kemp to leave.[12]

At this point, Updegraff grabbed Kemp and shoved him into a wall and then out the door.[13]  Updegraff and Schmitt followed Kemp out of the residence and

---

[2]   *Id.*
[3]   *Id.*
[4]   *Id.*
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*

down the driveway.[14]  Updegraff stopped walking at the end of his van, which was parked in the driveway, and Schmitt continued walking until he was between Updegraff's van and Kemp's vehicle, which was parked on the street.[15]  Updegraff and Schmitt continued to yell at Kemp to keep going and to leave the property.[16]

Kemp continued walking down the driveway, but instead of leaving in his vehicle or on foot, he opened the door to his vehicle and grabbed a handgun.[17] Kemp then fired several shots towards Updegraff and Schmitt as he walked back up the driveway towards them.[18]  Two of the shots struck Schmitt, one in the neck and one in the back of the head.[19]

Updegraff and Radcliffe tried to wrest the gun out of Kemp's control, and punched and kicked him several times in the process.[20]  Several neighbors heard the gunshots and saw the incident occurring and called the police.[21]  The police arrived within minutes and arrested Kemp, and Schmitt subsequently died as a result of the gunshot wounds.[22]

Kemp was charged with an open count of criminal homicide, two counts of aggravated assault, possession of an instrument of crime, and two counts of

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

recklessly endangering another person.[23]  Following a jury trial, Kemp was

convicted of third-degree murder and all other counts and was sentenced to 20-40

years in prison.[24]  Kemp filed a post-trial motion to vacate, which the court denied

on June 9, 2014.[25]  Kemp appealed to the Pennsylvania Superior Court, raising ten

arguments for relief.[26]  The Superior Court affirmed the judgment of sentence on

June 8, 2015.[27]  Kemp appealed to the Pennsylvania Supreme Court, which denied

the appeal on February 10, 2016.[28]

On February 23, 2016, Kemp filed a petition for state collateral relief under

Pennsylvania's Post-Conviction Relief Act ("PCRA"), and the trial court received

and docketed the petition on February 29, 2016.[29]  The court appointed counsel to

represent Kemp in the PCRA proceedings, and Kemp filed an amended PCRA

petition through counsel on June 7, 2016.[30]  Kemp's original PCRA petition raised

nine claims for relief, but the amended petition filed through counsel narrowed the

scope of the PCRA case to five claims: (1) that trial counsel was ineffective for

failing to call character witnesses on Kemp's behalf; (2) that trial counsel was

ineffective for failing to call an expert witness to offer testimony regarding

---

[23]  Doc. 13-1 at 1-5.
[24]  *Kemp*, 2015 WL 7078886, at *1.
[25]  *Id.*
[26]  *Id.* at *1-2.
[27]  *Id.* at *13.
[28]  *Commonwealth v. Kemp*, 131 A.3d 490 (Pa. 2016).
[29]  Doc. 13-2 at 3-16.
[30]  *Id.* at 18-52.

4

fingerprint and trace evidence found on a knife at the scene of the incident; (3) that

appellate counsel was ineffective for failing to appeal the trial court's suppression

of certain statements made by Updegraff; (4) that trial counsel was ineffective for

failing to object to a line of cross-examination that purportedly shifted the burden

of proof to Kemp; and (5) that trial counsel was ineffective by opening the door to

prior statements made by Kemp during a December 2009 dependency hearing.[31]

The PCRA court conducted an evidentiary hearing with respect to the first

and fifth claims.[32]  After conducting the evidentiary hearing, the court denied

PCRA relief on March 16, 2017.[33]  Kemp appealed the denial of his PCRA petition

to the Pennsylvania Superior Court, raising four arguments:

> A. Trial [c]ounsel was ineffective for failing to call character witnesses on Appellant's behalf when character witnesses were available and essential to Appellant's defense.
>
> B. Appellant's direct appeal rights must be reinstated when [a]ppellate [c]ounsel failed to appeal an order prohibiting the introduction of statements of the Commonwealth's key witness that he was concerned about ending up in prison.
>
> C. Appellant was entitled to an evidentiary hearing to address the failure to object to the Commonwealth's shifting the burden of proof to Appellant by its questioning of three witnesses.

---

[31] *Id.*
[32] *Id.* at 150.
[33] *Id.* at 150-69.

> D. Trial [c]ounsel was ineffective by opening the door to Appellant's previously precluded prejudicial testimony through questioning of a defense witness.[34]

The trial court issued a second opinion addressing the errors complained of on appeal on June 28, 2017, and the Superior Court adopted the trial court's opinion as its own and affirmed the denial of PCRA relief on February 20, 2018.[35]  Kemp filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on August 20, 2018.[36]

Kemp filed the instant petition on July 24, 2019, and the court received and docketed the petition on August 8, 2019.[37]  Respondents responded to the petition on November 22, 2019.[38]  Kemp did not file a reply brief in support of the petition, and the deadline for doing so has expired.  Accordingly, the petition is ripe for the court's review.

## II.   DISCUSSION

Kemp's petition raises nine counts for relief: (1) that trial counsel was ineffective for failing to call character witnesses; (2) that appellate counsel was ineffective for failing to appeal the suppression of Updegraff's statements; (3) that trial counsel was ineffective for failing to object to cross-examination that shifted

---

[34] *See Commonwealth v. Kemp*, No. 537 MDA 2017, 2018 WL 947484, at *1 (Pa. Super. Ct. Feb. 20, 2018) (alterations in original).

[35] *Id.* at *1-2.

[36] *Commonwealth v. Kemp*, 191 A.3d 746 (Pa. 2018).

[37] Doc. 1.

[38] Doc. 13.

6

the burden of proof to Kemp; (4) that trial counsel was ineffective by opening the
door to Kemp's prior statements made during the December 2009 dependency
hearing; (5) that trial counsel was ineffective for failing to raise a speedy trial
objection; (6) that trial counsel was ineffective for failing to introduce photographs
of knife wounds on Kemp's back; (7) that trial counsel was ineffective for failing
to object to the prosecution's use of Kemp's invocation of the right to counsel as
evidence against Kemp; (8) that trial counsel was ineffective for failing to
introduce evidence of the weapons that were present in Updegraff's home; and (9)
that trial counsel was ineffective for failing to introduce evidence of Updegraff and
Schmitt's criminal records.[39]  Respondents argue that Kemp's fifth, sixth, seventh,
eighth, and ninth claims are procedurally defaulted and that all of his claims should
be denied on their merits.[40]  I will address the issue of procedural default first
before turning to the merits of Kemp's petition.

### A.    Procedural Default

Under the procedural default doctrine, a federal court ordinarily may not
consider a state prisoner's claim for habeas corpus relief if the claim has not been
raised in state court in accordance with the procedural requirements of the state.[41]
If a claim has not been fairly presented in state court but state procedural rules

---

[39]  Doc. 1.
[40]  Doc. 13.
[41]  *Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

would clearly bar the petitioner from bringing the claim, exhaustion of state remedies is excused but the claim is subject to procedural default.[42]  In such a situation, the federal court may only reach the merits of the claim if the petitioner shows either (1) cause for the procedural default and prejudice resulting from the alleged violation of federal law or (2) that a fundamental miscarriage of justice would occur if the federal court did not consider the claim on its merits.[43]

In this case, Kemp's fifth, sixth, seventh, eighth, and ninth claims for habeas corpus relief were not raised on direct appeal or collateral review in Pennsylvania state court, and are therefore procedurally defaulted.[44]  Kemp nonetheless argues that the Court should consider claims based on PCRA counsel's ineffectiveness under the Supreme Court's holding in *Martinez v. Ryan*, 56 U.S. 1 (2012).[45]

In *Martinez*, the Supreme Court held that where state procedural rules require a defendant to raise ineffective assistance of counsel claims in collateral proceedings rather than on direct review, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel

---

[42] *Whitney v. Horn*, 280 F.3d 240, 252 (3d Cir. 2002) (citing *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000)).

[43] *Id.* (citing *Lines*, 208 F.3d at 166); *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[44] *See Kemp*, 2018 WL 947484, at *1-2; *Kemp*, 2015 WL 7078886, at *1-13.  The claims were included in Kemp's original PCRA petition but were not included in the counseled amended petition.  *See* Doc. 1 at 16; Doc. 13-2 at 3-52.

[45] Doc. 1 at 24-28.

in that proceeding was ineffective."[46]  To succeed on such an argument, a petitioner must show that PCRA counsel's representation was ineffective under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[47]  In other words, the petitioner must show (1) that PCRA counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance caused prejudice to the petitioner.[48]

Kemp fails to meet this standard.  He asserts that his PCRA counsel was ineffective, but offers nothing more than conclusory statements of ineffectiveness to support that assertion.[49]  He therefore fails to establish that counsel's representation fell below an objective standard of reasonableness or that counsel's allegedly defective performance caused him prejudice.[50]  I will accordingly reject

---

[46]  *Martinez*, 566 U.S. at 17.

[47]  *Martinez*, 566 U.S. at 14.

[48]  *See id.* at 14; *Strickland*, 466 U.S. at 687.

[49]  *See* Doc. 1 at 27 ("The petitioner avers that post-conviction relief counsel ignored and failed to advance claims of arguable merit contained within the pro se petition for relief, constituting the deficiency prong of the 'cause' element."); *id.* at 28 ("The petitioner argues that no competent attorney would choose to advance anything less than every available claim in light of the 'waiver doctrine' and given the seriousness of the case at hand.  Further, no such attorney would dismiss the possibility of dismissal of the charges against his client without making the attempt to further the claim."); *id.* at 32-33 ("[P]ost-conviction relief counsel was ineffective for failing to raise the issue in the amended petition for collateral relief.  No competent attorney would overlook the possibility of dismissal of the charges against his client and allow his statutory rights to be violated."); *id.* at 36 ("It follows that post-conviction relief counsel was ineffective for its failure to include this claim in the amended petition."); *id.* at 46 (same); *id.* at 50 (same); *id.* at 53 (same).

[50]  *See, e.g.*, *Ludovici v. Lamas*, No. 3:13-CV-02997, 2017 WL 9807115, at *13 (M.D. Pa. Oct. 18, 2017) (finding that procedural default was not excused under *Martinez* where petitioner "neither identified any specific error by PCRA counsel during the initial-review collateral proceeding, nor offered any explanation as to why such an alleged error amounts to constitutionally ineffective assistance of counsel under *Strickland*"), *report and*

Kemp's fifth, sixth, seventh, eighth, and ninth claims for habeas corpus relief as procedurally defaulted.[51]  My analysis will proceed to the merits with respect to Kemp's first four claims.

## B.    Merits

Kemp's remaining claims were all adjudicated on their merits in Pennsylvania state court and are accordingly governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which sets standards for the review of habeas corpus petitions brought by state prisoners.  AEDPA states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[52]

---

*recommendation adopted*, No. 3:13-CV-02997, 2018 WL 1919028, at *1 (M.D. Pa. Apr. 24, 2018).

[51]  These claims also fail to the extent  they attempt to raise independent claims for habeas corpus relief based on PCRA counsel's ineffectiveness, as such claims are not cognizable in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(i); *Martinez*, 566 U.S. at 17.

[52]  28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet."[53]  Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal."[54]  "Federal habeas courts must defer to reasonable state-court decisions,"[55] and may only issue a writ of habeas corpus when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement."[56]

To obtain habeas corpus relief based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance caused prejudice to the petitioner.[57]  The court's analysis as to whether counsel's performance was deficient must be "highly deferential" to counsel, and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[58]

The court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate.[59]  The court must apply a high

---

[53]   *Mays v. Hines*, 592 U.S. __, 141 S. Ct. 1145, 1149 (2021) (quoting *Harrington v. Richter*, 562 U.S. at 86, 102 (2011)).

[54]   *Harrington*, 562 U.S. at 102-03 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)).

[55]   *Dunn v. Reeves*, 594 U.S. __, 141 S. Ct. 2405, 2407 (2021).

[56]   *Mays*, 141 S. Ct. at 1149 (quoting *Harrington*, 562 U.S. at 102).

[57]   *Strickland*, 466 U.S. at 687.

[58]   *Id.* at 689.

[59]   *Dunn*, 141 S. Ct. at 2410.

level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate.[60]  The federal court may only grant habeas corpus relief if "*every* 'fairminded jurist' would agree that *every* reasonable lawyer would have made a different decision."[61]

In this case, the Superior Court considered and rejected Kemp's four remaining arguments of ineffective assistance of counsel, and Kemp simply restates his arguments in conclusory fashion and does not make any arguments as to how the Superior Court's decision was unreasonable or contrary to clearly established federal law.[62]  I have nonetheless reviewed his arguments and the Superior Court's decision and conclude that Kemp is not entitled to habeas corpus relief.  I address his arguments below.

### 1.    Counsel's Failure to Call Character Witnesses

Kemp's first ineffective assistance of counsel claim is that trial counsel was ineffective for failing to call character witnesses on his behalf.[63]  Although his petition before this Court does not specify which character witnesses counsel failed to call or what testimony the character witnesses would have provided, his PCRA petition indicated that counsel failed to call his friend, Gerald Zeidler, and his

---

[60]   *Id.*; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[61]   *Dunn*, 141 S. Ct. at 2411 (emphasis in original) (quoting *Harrington*, 562 U.S. at 101).

[62]   *See* Doc. 1 at 6-10.

[63]   *Id.* at 6.

sister, Amy Embick, both of whom would have testified to Kemp's reputation for truthfulness in the community and Kemp's reputation for being a nonaggressive and nonviolent person.[64]

The Superior Court denied this claim on its merits.[65]  The court concluded that the character witnesses would not have been allowed to testify as to Kemp's reputation for truthfulness because his reputation for truthfulness was not at issue in the trial.[66]  The court noted that trial counsel did not elicit testimony as to Kemp's reputation for being a nonaggressive and nonviolent person because such testimony would have opened the door to damaging cross-examination regarding previous incidents and statements by Kemp.[67]  Specifically, the government would have cross-examined the character witnesses as to a prior incident in which Kemp had pulled a knife on another person for no reason; prior statements by Kemp that he regularly carried a gun to ensure that he would win any fight he got into; prior violent incidents between Kemp and his mother; and a prior incident in which Kemp had used a weapon in a public place against an unarmed person.[68]  Cross-examination also may have elicited testimony that Kemp had previously threatened

---

[64] *See Kemp*, 2018 WL 947484, at *2.

[65] *See id.*  Because the Superior Court's opinion adopted the trial court's opinion as its own, I will cite to the Superior Court's opinion, which reproduces the trial court's opinion in full.  *See id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

suicide, made statements that he wished to harm his mother, slapped his wife, and choked another woman.[69]  Based on these risks of damaging cross-examination, trial counsel made the strategic decision not to call character witnesses because counsel determined that such testimony could have shown the jury that Kemp had a specific propensity for violence and could have led to a conviction for first-degree murder.[70]

The court concluded that counsel's decision not to call character witnesses was reasonable given the risk of damaging cross-examination.[71]  The court noted that one incident that would likely be elicited on cross-examination "would have been particularly harmful" to Kemp's defense.[72]  In the incident, Kemp and his children were shopping in a grocery store and one of the children was pushing the shopping cart.[73]  Another customer in the store inadvertently bumped his cart into the shopping cart pushed by Kemp's child and Kemp reacted by pulling a knife out of his pocket and threatening to attack the customer.[74]  The court concluded that this would have been particularly harmful because it would show "how much Kemp overreacts to trivial incidents and slights and how skewed his concept of

---

[69]  *Id.*
[70]  *Id.*
[71]  *Id.*
[72]  *Id.*
[73]  *Id.*
[74]  *Id.*

14

'self-defense' is that he was ready to use deadly force in a situation where clearly there was no threat of death or imminent serious bodily injury."[75]

I agree with the Superior Court's conclusion that trial counsel's decision not to call character witnesses was reasonable.  The numerous prior incidents in which Kemp had acted violently or expressed a willingness to act violently would have been particularly harmful to his defense, especially in light of the fact that his theory of the case was that he was acting in self-defense when he shot at Updegraff and Schmitt.  Accordingly, I will deny habeas corpus relief as to this claim.

### 2.  Counsel's Failure to Appeal Suppression of Updegraff's Statements

Kemp's second argument is that counsel was ineffective for failing to appeal the trial court's ruling that certain statements made by Updegraff were inadmissible.[76]  The relevant statements, which Updegraff made while in police custody, were as follows:

> **Michael Updegraff:** So I don't understand here, here's what— so I got a couple of things to look at here.  First of all to make sure you guys don't twist this thing wrong and I got a f—ing problem, which I don't see happening, but whatever.  Also I got to worry about this dumb a— and who he is.  You know what I'm saying?  I mean for him to jump off the band wagon like that and do something like that.

> **Detective Steven Sorage:** You're talking about the guy with the gun?

> **Michael Updegraff:** Yeah.

---

[75]   *Id.*
[76]   Doc. 1 at 7.

**Detective Steven Sorage:** Okay.

**Michael Updegraff:**  I don't know where he's from, I know he's from Fifth Avenue area, apparently, I don't know sh-t about him.

**Detective Steven Sorage:** How do you know he's from the Fifth Avenue area?

**Michael Updegraff:**  Because that's where she walked from there so apparently she picked up this dumb a— up somewhere along the line.  I know nothing about this mother f—er.

**Detective Steven Sorage:**  Okay.

**Michael Updegraff:**  You understand?  But I imagine it's from here –

**Detective Steven Sorage:**  All I've heard is his first name's [B]ill, that's all I know right now, I don't know a last name, I don't know anything else about him.

**Michael Updegraff:**  Well we'll all find out later, but I don't know nothing (sic) about this guy.  So you know, I mean if he has enough balls to do some stupid a— moron bullsh– like this, then you know, I got to look at my avenue like, you know, who's he running with?  And you know – so whatever: But, you know, I'm 51 years old and I kept my a— out of any penitentiary.  Did a lot of county, but I'm not going penitentiary bound, so I don't expect to sit my a—in a f—ing cage somewhere the rest of my entire life.

**Detective Steven Sorage:**  No.

**Michael Updegraff:**  So I'm not going to f—ing go after these mother f—ers, but they step on my land I want to make sure that I'm covered here, you understand what I'm saying.

**Detective Steven Sorage:**  I understand.

16

> **Michael Updegraff:**  I don't know who these guys are, you know what I mean?  I mean he's got nothing else to do something like this, who's he running with?  You following me?
>
> **Detective Steven Sorage:**  Yep.
>
> **Michael Updegraff:**  Which I'm going to find out, and I'll slap that on down the line who he's running with, because apparently these mother f—ers are nuts.  That's crazy what he did.[77]

Kemp argues that failing to appeal the suppression of these statements constituted ineffective assistance of counsel because Updegraff expressed concern about going to prison, which Kemp asserts would have helped his self-defense theory of the case because it expresses Updegraff's culpability and consciousness of guilty.[78]

The Superior Court denied Kemp's claim on the merits, noting that appellate counsel "is not required to raise all non-frivolous claims on appeal,"[79] and that a claim of ineffective assistance of appellate counsel may only succeed "when ignored issues are clearly stronger than those presented."[80]  Because Kemp did not make "any allegations or arguments to show [that] this issue was stronger or had a

---

[77]  *Kemp*, 2018 WL 947484, at *2 (alterations in original).

[78]  Doc. 1 at 7.

[79]  *Kemp*, 2018 WL 947484, at *2.

[80]  *Id.* (quoting *Commonwealth v. Jones*, 815 A.2d 598 (Pa. 2002)).

greater chance for success than the issues raised by appellate counsel," the court concluded that he was not entitled to PCRA relief.[81]

I find that the Superior Court's decision on this issue was reasonable and conformed to clearly established federal law on what a petitioner must prove to establish ineffective assistance of appellate counsel.[82]  Accordingly, I will deny habeas corpus relief as to this claim.

### 3.    Counsel's Failure to Object to Examination

Kemp's third argument is that counsel was ineffective by failing to object to the examination of three witnesses that Kemp contends shifted the burden of proof to him.[83]  Kemp does not state which witnesses' questioning is at issue or how the questioning shifted the burden of proof, but the court will liberally construe this argument as being identical to the argument raised in Kemp's amended PCRA petition, which argued that portions of the examination of Kemp, Williamsport Police Officer Joseph A. Ananea, Jr., and Williamsport Police Detective Raymond O. Kontz, III shifted the burden of proof.[84]  In the relevant portions of the

---

[81]   *Id.*  The court also rejected Kemp's argument because it took Updegraff's statements out of context and misconstrued the meaning of the statements and because Kemp had failed to establish prejudice resulting from counsel's alleged ineffectiveness.

[82]   *See Davila v. Davis*, 582 U.S. __, 137 S. Ct. 2058, 2067 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. . . . Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.").

[83]   Doc. 1 at 9.

[84]   *See* Doc. 13-2 at 41-45.

testimony, the Commonwealth questioned the witnesses as to whether Kemp made any statements about being attacked by Updegraff and Schmitt on the night of the incident or about whether he had acted in self-defense.[85]  Kemp contends that this testimony shifted the burden of proof by implying that he had to prove to the jury that he was innocent and argues that trial counsel was ineffective for failing to object to this testimony.[86]

The Superior Court found no merit to Kemp's ineffective assistance of counsel claim.  The court found that the testimony in question was clearly admissible to refute Kemp's theory of self-defense and that it did not shift the burden of proof.[87]  The court noted that the questioning was used to attack Kemp's credibility as a witness by showing that he did not claim self-defense on the night in question and instead appeared to construct the self-defense theory after the fact.[88]  I agree with the Superior Court's conclusion and find that the court's decision was not unreasonable or contrary to clearly established federal law.  I will accordingly deny habeas corpus relief as to this claim.

---

[85]  *Id.*
[86]  *Id.*; Doc. 1 at 9.
[87]  *Kemp*, 2018 WL 947484, at *2.
[88]  *Id.*

### 4.   Counsel's Questioning that Opened the Door to Kemp's Prior Statements

Finally, Kemp asserts that counsel was ineffective by eliciting testimony that opened the door to the admission of prior prejudicial statements that he had made during a Children and Youth dependency hearing.[89]  Kemp again fails to indicate which testimony opened the door to the prior prejudicial statements or what the prior prejudicial statements were, but I will liberally construe this as an identical argument to the one raised in his amended PCRA petition.[90]

Kemp's argument is based on statements that he made during an unrelated Clinton County Children and Youth dependency hearing in 2009.[91]  During the hearing, Kemp stated that he frequently possessed a gun or a knife and that he normally drove with a gun in his car because he had a right to do so, "[a]nd what's the point in having the guns and the permit to carry if you're not going to make use of it?"[92]  Kemp also stated that if he was not carrying a gun at any given time, he would have a knife in his pocket at almost all times and that he tended to carry weapons because he did not "have a desire to get into a fight that I can't win."[93]  Kemp's trial counsel filed a motion *in limine* prior to trial to exclude the 2009

---

[89]   Doc. 1 at 10.
[90]   *See* Doc. 13-2 at 45-51.
[91]   *Id.* at 45.
[92]   *Id.* at 45-46.
[93]   *Id.* at 46.

statements.[94]  The trial court granted the motion, but left open the possibility that testimony during trial could open the door to the evidence being admitted.[95]

Examination of Kristin Smith, Kemp's girlfriend at the time of the shooting, subsequently opened the door to the 2009 statements being admitted.  During Smith's testimony, defense counsel asked Smith if she knew why Kemp kept a gun in his car.[96]  Smith responded that it was because she did not want it in her house.[97] In response to this testimony, the Commonwealth sought to introduce Kemp's 2009 statements to rebut the inference that Kemp solely kept the gun in his car because Smith did not want the gun in her house.[98]  The trial court granted the request and allowed the 2009 statements to come in.[99]  Kemp argues that counsel's questioning of Smith that opened the door to the 2009 statements constituted ineffective assistance of counsel.[100]

Trial counsel testified during the PCRA evidentiary hearing regarding the questioning that opened the door for the 2009 statements.  Trial counsel testified that he was aware of the possibility that his questioning could erroneously open the door to the statements coming in and that he was "on eggshells" while questioning

---

[94]  *Id.*
[95]  *Id.* at 46-47.
[96]  *Id.* at 47.
[97]  *Id.*
[98]  *Id.*
[99]  *Id.*
[100]  *Id.* at 45-51.

witnesses to try to not open the door.[101]  Trial counsel stated that when he asked Smith why Kemp kept the gun in his vehicle, his purpose was to elicit testimony indicating that Kemp kept the gun in his vehicle for an innocent purpose and did not intend to use the gun in any illegal fashion.[102]  Counsel further explained that he intended to show that when Kemp left his home, he did not do so with any criminal intent.[103]  Counsel did not believe that the testimony would open the door to the 2009 statements coming in, only that it would "get me to the door without opening it."[104]  Counsel nevertheless weighed the risk of the testimony opening the door and made the strategic decision to elicit the testimony because he thought that it would help to create a reasonable doubt in the jury's mind as to whether Kemp had committed criminal homicide.[105]

The Superior Court denied Kemp's ineffective assistance of counsel claim on its merits, finding that Kemp failed to prove that counsel's assistance fell below an objective standard of reasonableness and that the allegedly defective performance caused Kemp prejudice.[106]

I agree.  A court reviewing whether counsel provided ineffective assistance must indulge a strong presumption that counsel's conduct was reasonable and

---

[101]  *Kemp*, 2018 WL 947484, at *2.
[102]  *Id.*
[103]  *Id.*
[104]  *Id.*
[105]  *Id.*
[106]  *Id.*

cannot second-guess a seemingly reasonable decision merely because it appears to have been mistaken or harmful in hindsight.[107]  Trial counsel in this case elicited testimony from Smith about why Kemp kept a gun in his car based on a reasonable strategy of showing that Kemp did not keep the gun in his car for a criminal purpose.  The fact that this testimony subsequently opened the door to the 2009 statements and may have harmed Kemp's defense of the case does not mean that counsel's decision to elicit the testimony in the first place was unreasonable.  Accordingly, I will deny habeas corpus relief as to this claim.

## III.   CONCLUSION

For the foregoing reasons, Kemp's petition for writ of habeas corpus will be denied with prejudice.  A certificate of appealability will not be issued because no reasonable jurist would disagree with my ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further.[108]

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[107] *See Strickland*, 466 U.S. at 689; *Bell v. Cone*, 535 U.S. 687, 702 (2002); *Abdul-Salaaam v. Sec'y of Pa. Dep't of Corr.*, 895 F.3d 254, 266 n.6 (3d Cir. 2018).
[108] *Buck v. Davis*, 580 U.S. __, 137 S. Ct. 759, 773 (2017) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).